IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:21-CV-00103-KDB-DCK

| | |
|---|---|
| REBECCA L. BOYKIN, | |
| Plaintiff, | |
| v. | **ORDER** |
| UNITED STATES OF AMERICA, | |
| Defendants. | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment and the United States' Motion for Partial Summary Judgment. (Doc. Nos. 40, 42). In this action, Plaintiff Rebecca L. Boykin seeks a declaration that the Nominee Liens asserted by the United States against her home are invalid. *See* Doc. No. 1. The United States counterclaims, arguing that the liens are valid and that Plaintiff's husband, James Balvich, fraudulently transferred money and 50% of his interest in KB Management Services LLC to Plaintiff. *See* Doc. No. 5. Plaintiff has now moved for summary judgment on all counterclaims asserted by the United States. In turn, the United States has moved for summary judgment on its second counterclaim alleging the fraudulent transfer of the 50% interest in KB Management Services LLC. *See* Doc. No. 40, 42.

The Court has reviewed the motions, the parties' briefs and exhibits, and the argument of counsel at the May 10, 2023, hearing. For the reasons discussed below, the Court will deny the Plaintiff's Motion for Summary Judgment and grant the United States' Motion for Partial Summary Judgment.

1

## I. FACTUAL BACKGROUND

From 1999 through 2006 James Balvich, an emergency room physician, did not pay income tax. *See* Doc. No. 41-10, 42-3. As a result, statutory penalties and interest were assessed against him on top of the tax he owed. *Id*.; Doc. No. 41-12. The IRS also imposed civil fraud penalties under 26 U.S.C. § 6663 against Balvich because he omitted income that he received from KB Management from his original 2003 through 2006 tax returns. *Id*. To resolve these tax related debts, Balvich entered into four Partial Payment Installment Agreements with the IRS beginning in 2009. *See* Doc. No. 47-1. A "Partial Payment Installment Agreement" is used when the IRS has determined the taxpayer's current ability to pay is insufficient for the taxpayer to fully pay his delinquent tax liability before the expiration of the period of limitations on collection. *Id*. Balvich has subsequently defaulted on every agreement. *Id*.

In early 2010, Balvich began a romantic relationship with Plaintiff. *See* Doc. No 42-3, ¶ 14. Later in 2010, Balvich realized that he needed help with administrative and personal tasks due to working overnight shifts. *Id*. ¶ 15. Balvich asked Plaintiff if she would be interested in serving as his assistant, and she agreed. *Id*. Plaintiff was initially paid $1,000 per month. *Id*. ¶ 16. However, as she took over additional duties and responsibilities, her pay increased. *Id*. Though described as a "personal assistant," over time Plaintiff became more of an executive assistant or office manager. *Id*.

Upon their marriage in June 2015, Balvich transferred a 50% ownership of KB Management Services, LLC to Plaintiff. Doc. No. 42-3. KB Management is a limited liability company through which emergency rooms paid Balvich for his work. Doc. No. 41-3. Balvich contends that he felt this was appropriate because his ex-wife had owned 50% of his business during their marriage and was awarded half of its value upon their divorce. *Id*. Plaintiff admits that

2

she did not provide any monetary consideration in exchange for this transfer. *See* Doc. No. 41-16. In June 2015, KB Management had no tangible assets, but had a regular source of income from Balvich's work as an emergency room physician. *Id.* From 2015 through 2019 Plaintiff received $340,625 in guaranteed payments or cash distributions from KB Management because of her 50% ownership interest in the entity. *See* Doc. Nos. 41-4, 41-5, 41-6, 41-7. Plaintiff is also the owner of real property located at 176 Sweet Autumn Lane in Boone, North Carolina. *See* Doc. No. 42-4. After buying the lot in early 2014, Plaintiff built a house on the property and has lived there since June 2015. *Id.*

The United States filed an action in the United States District Court for the Western District of North Carolina on August 1, 2019, to reduce to judgment Balvich's tax liabilities. *See* Doc. No. 41-10. On August 6, 2020, this Court entered an order that Balvich is indebted to the United States for the taxable years 1999 through 2006 in the amount of $4,473,711.27 as of July 31, 2019, plus statutory interest after that date. *See* Doc. No. 41-11. As of January 23, 2023, James Balvich owes $4,940,940.38 for the 1999 through 2006 taxable years. *See* Doc. No. 41-14, ¶ 4.

The Plaintiff filed her Complaint on July 12, 2021, seeking a declaration that the nominee tax liens asserted against her residence are invalid. (Doc. No. 1). The United States answered and asserted counterclaims on September 10, 2021. (Doc. No. 5). The counterclaims allege that the Plaintiff received fraudulent transfers from her husband in the form of (i) excessive compensation and (ii) transfer of 50% ownership of his interest in KB Management Services, LLC without adequate consideration. *Id.* The counterclaims also seek enforcement of the United States' nominee liens. *Id.*

3

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.*, (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252, quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely

4

disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252, quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining whether summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation and citation omitted).

### III. DISCUSSION

Generally, the parties do not dispute the legal principles governing the United States' counterclaims. Both parties seek summary judgment under N.C. Gen. Stat. § 39-23.4(a), the North Carolina statute that determines when a transfer made by a debtor is fraudulent as to a creditor.

5

*See* Doc. Nos. 40, 42. The United States also seeks summary judgment under N.C. Gen. Stat. § 39-23.5, which addresses the specific circumstance of a claimed fraudulent transfer after a creditor's claim has been established. In response, Plaintiff argues that the United States did not properly plead a N.C. Gen. Stat. § 39-23.5 claim and therefore may not seek summary judgment on that basis. The Court will address each argument in turn.

   a. <u>N.C. Gen. Stat. § 39-23.4(a)</u>

The North Carolina Uniform Voidable Transactions Act provides that a transfer made by a debtor is fraudulent as to a creditor — whether the creditor's claim arose before or after the transfer was made or the obligation was incurred — if the debtor made the transfer or incurred the obligation: (1) with intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer and the debtor (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (b) intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. *See* N.C. Gen. Stat. § 39-23.4(a). A party need satisfy only one of the two enumerated tests to succeed on its claim.

Significantly, both tests under Section 39.23.4(a) require a determination of Balvich's intent. *See* N.C. Gen. Stat. § 39-23.4(a)(1), (a)(2)(b).[1] In the United States' telling, Balvich transferred a 50% ownership interest in KB Management to Plaintiff in exchange for nothing and to avoid collection of his outstanding tax liability. *See* Doc. Nos. 40-1; 41-3, 33:15 – 33:20. Predictably, Plaintiff's version of events is different. She contends that her husband legitimately

---

[1] Neither party contends that N.C. Gen. Stat. § 39-23.4(a)(2)(a) is applicable here. *See* Doc. Nos. 40, 42.

transferred the 50% ownership interest in KB Management to recognize her work as his administrative assistant and the life-long commitment they made through marriage. *See* Doc. Nos. 42-1, 42-3. Further, the parties offer conflicting evidence and testimony about Balvich's intent in making the transfer and his belief in his ability to pay his tax assessment — through a monthly installment plan or otherwise. These varying accounts of Balvich's intent are the essence of a material factual dispute. *See Reetz v. Lowe's Companies, Inc.*, No. 518CV00075KDBDCK, 2021 WL 535160, at *1–2 (W.D.N.C. Feb. 12, 2021). Thus, the Court finds that neither party has proven an entitlement to a summary disposition under N.C. Gen. Stat. § 39-23.4(a), and the Court will deny the cross motions for summary judgment as to this ground.

   b. <u>N.C. Gen. Stat. § 39-23.5.</u>

The North Carolina Uniform Voidable Transactions Act also provides that a transfer made by a debtor is fraudulent as to a present creditor — whose claim arose before the transfer was made — if: (i) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer or obligation; and (2) the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer. *See* N.C. Gen. Stat. § 39-23.5(a).

Before reaching the merits of the United States' argument under N.C. Gen. Stat. § 39-23.5, the Court must address whether the United States properly pled that claim. In general, the Federal Rules of Civil Procedure do not require a party to plead all its specific legal theories. At the same time, even "notice pleading" is designed to provide parties with fair notice of the claims against them and the grounds upon which those claims rest. *See Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *abrogated on other grounds by Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Dove Air, Inc. v. Fla. Aircraft Sales, LLC*, 2011 U.S. Dist. LEXIS 88611, *12 (W.D.N.C. Aug. 9, 2011). Therefore, the well-

7

established "liberal" pleading rules outlined by the Supreme Court cannot be construed so liberally as to deprive a party of notice. *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 Fed.Appx. 556, 563 (4th Cir. 2008) (unpublished). Put another way, the Court will not allow a party to raise a new argument at the summary judgment stage if the basis was not evident from the complaint. *See Duke Energy Fla., Inc. v. Westinghouse Elec. Co. LLC*, No. 3:14-cv-00141-MOC-DSC, 2016 U.S. Dist. LEXIS 134453, at *12 (W.D.N.C. Sep. 29, 2016). Plaintiff argues that the United States never asserted a claim under N.C. Gen. Stat. § 39-23.5 and therefore should be precluded from seeking summary judgment on that basis. The United States responds that its second counterclaim was pled under all sections of the North Carolina Voidable Transaction Act. *See* Doc. No. 5.

On its face, the United States' counterclaim chiefly seeks liability under Section 39-23.4. Paragraphs 43 and 44 of the counterclaims specifically cite Section 39-23.4 as the basis of liability. *Id*. ¶¶ 43, 44. In contrast, the counterclaim does not explicitly mention Section 39-23.5. Still, the claim was pled under the heading of "N.C. Gen. Stat. § 39-23.1, *et seq*." The counterclaim also contains all the required factual allegations for a Section 39-23.5 claim. Paragraphs 37 and 38 state that Balvich transferred his 50 % interest in KB Management after he incurred his federal tax liabilities and that he did not receive reasonably equivalent value for the transfer. *Id*. ¶¶ 37, 38. While the counterclaim does not explicitly state that Balvich was insolvent at the time, there can be no mistake that insolvency was alleged. The countercomplaint details Balvich's delinquent tax liabilities and the comparatively small amount of income he generates. *Id*. ¶¶ 9, 22. It also asserts that he transferred the 50 % interest in KB Management even though he would incur debts beyond his ability to pay. *Id*. ¶ 39. In short, keeping in mind the well-established liberal pleading standard,

8

the Court finds that the countercomplaint sufficiently put Plaintiff on notice of a possible Section 39-23.5 theory of liability.

Turning to the merits, the Court finds that the United States is entitled to judgment as a matter of law under N.C. Gen. Stat. § 39-23.5(a).[2] First, it is undisputed that the United States' claim arose before Balvich transferred a 50% ownership of KB Management to Plaintiff.[3] The IRS made federal income tax assessments against Balvich for the 1999 to 2006 tax years on or before August 30, 2010, *see* Doc. Nos. 41-10, 41-12, 41-13 and Balvich did not transfer the 50% ownership in KB Management to Plaintiff until June 2015. *See* Doc. Nos. 5, 22, 41-3, 41-15, 41-16. Thus, the first element of § 39-23.5(a) has been easily met.

Second, Balvich did not receive a reasonably equivalent value in exchange for the transfer. Plaintiff argues that a factual dispute exists as to whether Balvich received reasonably equivalent value for the compensation paid to Plaintiff because the company "had no assets" at the time of the transfer. *See* Doc. No. 45. Yet, this argument is unconvincing. Regardless of its balance sheet, KB Management had (and was expected to have) significant income at the time of the ownership transfer because of Balvich's ongoing 36-year career as a physician. *See* Doc. Nos. 41-3, 42-3. Indeed, Plaintiff received significant value, $340,625, due to her 50% ownership in KB Management. *See* Doc. Nos. 41-4, 41-5, 41-6, 41-7. As for her reciprocal contribution, Plaintiff admits that she "did not provide any monetary consideration in connection with [the transfer of the 50% interest in KB Management] but has provided Balvich with love, affection, and

---

[2] The United States also seeks summary judgment under N.C. Gen. Stat. § 39-23.5(b). This section only applies when "the transfer was made to an insider for an antecedent debt." *Id*. Plaintiff has never argued that the transfer was made for an antecedent debt and therefore this section is inapplicable.

[3] At oral argument, Plaintiff's counsel conceded that this element has been met.

9

companionship for the entirety of their marriage." *See* Doc. No. 41-16. Yet, "love, affection, and companionship" is not valid consideration here. *See DWC3, Inc. v. Kissel*, 246 N.C. App. 361, 2016 WL 1006133, *5 (2016) (holding that transfer motivated by love and affection does not constitute reasonably equivalent value under North Carolina's fraudulent transfer statute).[4] Therefore, it is undisputed that Balvich did not receive a reasonably equivalent value in exchange for the transfer.

And lastly, Balvich was insolvent at the time of the transfer. A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets. *See* N.C. Gen. Stat. § 39-23.2 (a). A debtor that is generally not paying the debtor's debts as they become due . . . is presumed to be insolvent." N.C. Gen. Stat. § 39-23.2(b). In 2015, Balvich could not pay his debts as they came due. At the time of the transfer, Balvich was enrolled in a Partial Payment Installment Agreement (which he defaulted on). Indeed, the installment agreement itself presupposes that he did not have the ability to fully pay his tax liability. *See* Doc. No. 47-1. Moreover, the tax assessments against Balvich totaled over $1.769 million. *See* Doc. No. 41-14. The joint 2015 income tax return filed by Plaintiff and Balvich showed adjusted gross income totaling $502,328. *See* Doc. No. 41-17. There is no evidence before the Court that Balvich had any other assets that might have rendered him solvent. Accordingly, no reasonable jury could find that Balvich was not insolvent.[5]

---

[4] Notably, Plaintiff does not argue that her continued administrative assistance constitutes reasonably equivalent value.

[5] At oral argument, Plaintiff's counsel admitted that no reasonable jury could find that Balvich was not insolvent at the time of the transfer.

10

In sum, the United States has proven an entitlement to summary judgment under Section 39-23.5 because Balvich was insolvent when he transferred a 50% ownership in KB Management, after the United States' claim arose, in exchange for nothing.

   c. The Appropriate Forms of Relief

Finally, the parties dispute the relief which may be awarded to the United States. Rule 54 (c) provides that, except in cases of judgment by default, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." The Fourth Circuit has held that district courts have a "duty to grant whatever relief is appropriate in the case on the basis of the facts proved" even if the party has not demanded that relief in its pleadings, and "[t]he pleadings serve only as a rough guide to the nature of the case." *Robinson v. Lorillard Corp.*, 444 F.2d 791, 803 (4th Cir. 1971); *see Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond*, 80 F.3d 895, 901 (4th Cir. 1996) ("Rule 54(c) . . . commands that the trial court shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." (internal quotation marks omitted)). However, a party "will not be given relief not specified in its complaint where the failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief." *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716 (4th Cir. 1983).

The United States seeks to recover a money judgment against Plaintiff even though its countercomplaint specifically seeks foreclosure on Plaintiff's property, not a money judgment. *See* Doc. Nos. 5, 40-1. If a transaction is voidable under the North Carolina Uniform Voidable Transactions Act, a remedy for the creditor is a judgment against the transferee for the value of the asset transferred, or the amount necessary to satisfy the creditor's claim, whichever is less. *See* N.C. Gen. Stat. § 39-23.8(b); N.C. Gen. Stat. § 39-23.7 (listing remedies); *Cherry Cmty. Org. v.*

*Sellars*, 381 N.C. 239, 247 (N.C. 2022) ("creditor who is successful on a [North Carolina Uniform Voidable Transactions Act] claim may obtain avoidance of the transfer … to the extent necessary to satisfy the creditor's claim and may recover judgment for the value of the asset transferred against" the receiver of the transfer). Therefore, the governing statute plainly permits the United States to recover a money judgment.

Accordingly, the Court will permit the United States to recover a money judgment. Plaintiff points out that the Court denied the United States' Motion for Leave to Amend its Counterclaims finding that Plaintiff would be prejudiced by going from "potentially losing her residence to potentially losing her residence and having a money judgment of more than $ 300,000 entered against her." *See* Doc. No. 39. However, the analysis at this stage differs significantly. In denying the United States' Motion to Amend the Court largely relied on the United States' lack of diligence in seeking an amendment. *Id*. Here, there is no lack of diligence on the part of the United States.[6] The United States' original counterclaim sought liability under a statute that explicitly authorizes the recovery of a money judgment. *See* Doc. No. 5. The United States' counterclaim also requests "[s]uch other and further relief as the Court deems just and proper." *See* Doc. No. 5. Plaintiff therefore was on notice — or should have been — of her potential exposure to a money judgment. As a result, Plaintiff will not be unduly prejudiced by the award of a money judgment[7] on claims already pled.

---

[6] While the Court remains convinced that the United States acted without the required diligence in seeking an amendment (which alone was sufficient to deny the motion), the Court may have been off target with its prejudice analysis. Plaintiff's counsel candidly admitted that he could not identify any way in which the discovery process would have differed if the counterclaim specifically stated that the United States sought a money judgment. Accordingly, the Court's previous prejudice analysis is withdrawn and not controlling here in light of Plaintiff's counsel admission.
[7] The value of Boykin's 50% ownership in KB Management in easily discernable. From 2015 through 2019 Plaintiff received $340,625 in guaranteed payments or cash distributions from KB

12

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 42), is **DENIED**;

2. The United States' Motion for Partial Summary Judgment, (Doc. No. 40), is **GRANTED**;

3. The United States is awarded a money judgment in the amount of $340,625.00.

4. This case shall proceed to trial on the merits in the absence of a voluntary resolution of the dispute among the parties.

   **SO ORDERED.**

Signed: May 15, 2023

Kenneth D. Bell
United States District Judge

---

Management because of her 50% ownership interest in the entity. *See* Doc. Nos. 41-4, 41-5, 41-6, 41-7. Therefore, the value of the asset transferred is $340,625.